## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARVEAL LAURIE,** | **CIVIL ACTION** |
| **Plaintiff** | |
| | |
| **VERSUS** | **NO.  25-1316** |
| | |
| **J. PATRICK LEE CONSTRUCTION,** | **SECTION: "E" (1)** |
| **LLC, ET AL.,** | |
| **Defendants** | |

## <u>ORDER AND REASONS</u>

Before the Court is a motion to remand filed by Plaintiff Darveal Laurie ("Plaintiff").[1] Defendants Devin Carraby ("Carraby") and DC Fastlane Trucking, LLC ("Fastlane") (collectively, "Fastlane Defendants") filed an opposition.[2] Defendants J. Patrick Lee ("JPL") Construction, LLC, Great West Casualty Company, and William Cody Hutchinson ("Hutchinson") (collectively, "JPL Defendants") filed a separate opposition.[3] Plaintiff filed a reply.[4]

## <u>BACKGROUND</u>

On July 30, 2024, Plaintiff filed a petition in the Civil District Court for the Parish of Orleans.[5] Plaintiff alleges that on November 7, 2023, he was driving a vehicle westbound on I-10.[6] Plaintiff alleges a driver traveling two vehicles behind him (the "Third Vehicle") collided with a vehicle immediately behind Plaintiff (the "Second Vehicle") and pushed this vehicle into Plaintiff's vehicle, resulting a three-car collision

---

[1] R. Doc. 7.
[2] R. Doc. 10.
[3] R. Doc. 12.
[4] R. Doc. 14.
[5] R. Doc. 1-1 at p. 1.
[6] *Id.* at p. 2.

and causing damage to Plaintiff.[7] Plaintiff alleges the Third Vehicle was driven by Hutchinson, who was acting in the course and scope of employment for JPL.[8] Plaintiff sued the JPL Defendants for negligence.[9] Plaintiff is a Louisiana resident.[10] The JPL Defendants are all domiciled in either Missisippi or Nebraska.[11]

On September 23, 2024, Plaintiff filed a first amended petition in state court.[12] In the first amended petition, Plaintiff added Carraby and Fastlane as defendants.[13] Plaintiff alleges the Second Vehicle was driven by Carraby, who was acting in the course and scope of employment for Fastlane.[14] Plaintiff sues the Fastlane Defendants for negligence.[15] Plaintiff alleges Carraby is domiciled in Louisiana.[16] Plaintiff alleges "the vehicles being driven by [Hutchinson] and [Carraby] failed to slow and rear ended the vehicle driven by" Plaintiff.[17] Plaintiff further alleges Hutchinson (driver of the Third Vehicle) and Carraby (driver of the Second Vehicle) are negligent for:

Failing to keep his/her vehicle under control;

Failure to see what a reasonable driver should have seen;

Failure to keep a good and careful lookout

Failure to maintain reasonable and proper control while operating the vehicle

Failing to see what he/she should have seen;

Failure to maintain a safe distance:

---

[7] *Id.* at p. 2.
[8] *Id.*
[9] *Id.* at pp. 1-3.
[10] R. Doc. 1 at ¶ IX.
[11] *Id.* at ¶¶ X.-XII.
[12] R. Doc. 1-1 at pp. 14-17.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.* at p. 15.
[17] *Id.*

Following too closely;
Failing to avoid a collision;

Failing to yield the right-of-way;

Improper lane use;

Negligent entrustment;

Driving at a speed greater than was reasonable and prudent under the circumstances;

Careless operation of a motor vehicle; and

Any and all other acts of negligence that may appear at the trial of this matter.[18]

On February 25, 2025, the parties to this suit first received dash camera footage from the vehicles of Hutchinson and Carraby.[19] On June 11, 2025, Plaintiff filed a second amended petition in state court.[20]

On June 27, 2025, the JPL Defendants removed this action to federal court.[21] The JPL Defendants allege the Court has diversity jurisdiction over this action.[22] The JPL Defendants argue "Plaintiff named Devin Carraby and his employer, DC Fastlane Trucking, LLC, as defendants in this matter; however, these defendants are improperly joined in an effort to destroy diversity and prevent removal of this action."[23]

---

[18] *Id.* at pp. 15-16.
[19] R. Doc. 1-1; R. Doc. 7-3 at pp. 5-6; R. Doc. 7-7; R. Doc. 12 at p. 3 (internal citation omitted) ("Plaintiff argues removal should have been filed within 30 days of the addition of non-diverse parties and/or the production of dash camera video. Defendants disagree.").
[20] R. Doc. 12-1. In this second amended petition, Plaintiff added a claim for punitive damages under Mississippi law against JPL and Hutchinson. *Id.*
[21] R. Doc. 1.
[22] *Id.* at ¶ XXIX.
[23] *Id.* at ¶¶ XIII.-XIX.

On July 7, 2025, Plaintiff filed the instant motion to remand.[24] As part of this motion, Plaintiff alternatively requests leave to amend his complaint to add the Louisiana Department of Transportation ("LA DOTD") as a Defendant.[25]

## LEGAL STANDARD

### I.    Timeliness of Removal

Pursuant to 28 U.S.C. § 1446(b)(1), when a case satisfies the requirements for federal jurisdiction and is removable from state court, any notice of removal "shall be filed within 30 days" of a defendant's receipt of "the initial pleading setting forth the claim for relief." Section 1446(b)(3), which provides a timeline for removal when the initial pleading does not make clear the case is removable but some later filing does, allows for "a notice of removal [to] be filed within 30 days after receipt by the defendant" of "an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable."[26]

When an "other paper" is the basis for the Defendant's argument that there has been an improper joinder, "a defendant has 30 days from the date that the fraudulent joinder could first be *ascertained* in which to file a notice of removal."[27] The United States Court of Appeals for the Fifth Circuit has explained that "'[a]scertain' means 'to make

---

[24] R. Doc. 7.

[25] *Id.*; R. Doc. 7-3 at pp. 1, 13-15.

[26] 28 U.S.C. § 1446(b)(3).

[27] *Delaney v. Viking Freight, Inc.*, 41 F. Supp. 2d 672, 674 (E.D. Tex. 1999) (emphasis added) (citing *Jernigan v. Ashland Oil*, 989 F.2d 812, 817 (5th Cir. 1993)); *Vinson v. Sheraton Operating Corp.*, No. 01-01444, 2001 WL 1090793, at *1 (E.D. La. Sept. 14, 2001) ("Specifically, in removal cases involving fraudulent joinder claims, the removal period commences when the defendant can first ascertain that a party has been fraudulently joined." (first citing *Jernigan*, 989 F.2d at 817; then *Delaney*, 41 F. Supp. 2d at 674); *Harrod v. Zenon*, No. 03-01088, 2003 WL 21748687, at *6 (E.D. La. July 25, 2003) ("In removal cases involving fraudulent joinder claims, the period for timely removal commences when the defendant can first ascertain that a party has been fraudulently joined." (first citing *Vinson*, 2001 WL 1090793, at *1; then *Jernigan*, 989 F.2d at 817)).

certain, exact, or precise' or 'to find out or learn with certainty.'"[28] As used in Section 1446(b)(3) regarding an other paper, ascertain, "in contrast to the [language in § 1446(b)(1) regarding initial pleadings], seems to require a greater level of certainty or that the facts supporting removability be stated unequivocally."[29] In other words, "the information supporting removal in a[n] . . . other paper must be 'unequivocally clear and certain' to start the time limit running . . . . This clearer threshold promotes judicial economy. It should reduce 'protective' removals by defendants faced with an equivocal record."[30] Under this rule, courts operate more efficiently, avoiding copious time spent in search of what a defendant knew or should have known.

## II.   Improper Joinder

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[31] Pursuant to 28 U.S.C. § 1332, federal district courts have original jurisdiction over all civil matters in which the plaintiffs are citizens of different states from the defendants and the amount in controversy exceeds $75,000.[32] Only if these requirements are met may a defendant remove the action to federal court.[33] There is an exception to this complete diversity rule, however. If a non-diverse defendant has been "improperly joined," a defendant may nonetheless remove the action, and the improperly joined defendant's citizenship is disregarded for purposes of

---

[28] *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002) (citing WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 107 (1990)).
[29] *Id.*
[30] *Id.*
[31] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).
[32] 28 U.S.C. § 1332(a).
[33] *See* 28 U.S.C. § 1441(a).

determining whether the federal court has diversity jurisdiction.[34] The removing party bears the burden of showing subject-matter jurisdiction exists and removal is proper.[35]

The parties in this case do not dispute Plaintiff and the Fastlane Defendants are Louisiana citizens.[36] The presence of the Fastlane Defendants, if properly joined, defeats complete diversity of citizenship and requires remand to state court. The JPL Defendants' only potential basis for claiming diversity jurisdiction exists is that the Fastlane Defendants were improperly joined.[37]

In cases removed based on diversity jurisdiction and improper joinder, the removing party must show either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[38]

A party claiming improper joinder bears a heavy burden of proof.[39] "The test for improper joinder where there is no allegation of actual fraud is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant."[40] "In determining the validity of an allegation of improper joinder, the district court must construe factual allegations, resolve contested factual issues, and resolve ambiguities in the controlling state law in the plaintiff's favor."[41] "The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to

---

[34] *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (en banc).

[35] *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[36] R Doc. 1 at ¶¶ IV., IX.; R. Doc. 12 at p. 2.

[37] R. Doc. 1 at ¶¶ XIII.-XIX.

[38] *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)).

[39] *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005).

[40] *Rodrigue v. Cont'l Ins. Co.*, No. 14-1797, 2014 WL 4999465, at *2 (E.D. La. Oct. 7, 2014) (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)).

[41] *Id.* (citing *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995)).

determine whether the complaint states a claim under state law against the in-state defendant."[42]

While the standard for evaluating a claim of improper joinder is similar to the standard used when evaluating a Rule 12(b)(6) motion for failure to state a claim, the scope of the Court's inquiry is broader than it would be with a Rule 12(b)(6) motion; the Court will not "pre-try" the case, but the Court may, in its discretion, "pierce the pleadings" under certain circumstances and consider summary judgment type evidence to determine whether the plaintiff's claim has a factual basis.[43] This summary inquiry is "appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery" against any non-diverse defendant.[44] "[T]he inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden."[45]

## LAW AND ANALYSIS

### III.    The JPL Defendants' removal was timely because Carraby's dash camera footage did not unequivocally reveal the JPL Defendants' basis for removal.

Plaintiff first argues the JPL Defendants' removal was untimely because their removal was more than thirty days after receipt of Carraby's dash camera footage in discovery.[46] Plaintiff does not point to any evidence, other than Carraby's dash camera footage, that would have begun Defendants' thirty day time period to remove.[47] On

---

[42] *Smallwood*, 385 F.3d at 573.
[43] *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir. 2003).
[44] *Smallwood*, 385 F.3d at 573-74.
[45] *Id.* at 574.
[46] R. Doc. 7-3 at pp. 5-9.
[47] R. Doc. 7-3.

February 25, 2025, all parties first received Carraby's dash camera footage.[48] On June 27, 2025, four months later, the JPL Defendants filed their notice of removal.[49]

The Court must assess when the Defendants could first ascertain there had been an improper joinder to determine the timeliness of the removal.[50] A defendant cannot ascertain an improper joinder until the facts supporting the improper joinder are "unequivocally clear and certain."[51] Carraby's dash camera footage does not unequivocally show that Plaintiff has no possibility of recovery against the Fastlane Defendants. In the context of this negligence claim stemming from a three-car collision, the Court finds the Defendants' receipt of Carraby's dash camera footage did not allow them to ascertain this case was removable. Accordingly, the Defendants receipt of Carraby's dash camera footage on February 25, 2025 did not start the thirty day time period for Defendants to remove to this Court. The JPL Defendants' removal was timely.

## IV.    The Defendants have not met their heavy burden of demonstrating that Plaintiff improperly joined Carraby.

The Defendants do not assert any fraud in the pleadings in this case. Defendants assert only that Plaintiff has no possible cause of action against Carraby.[52] The Court's analysis focuses solely on Plaintiff's claim against Carraby because Plaintiff sues Fastlane only in its capacity as Carraby's employer.[53] As a result, if Plaintiff has no possibility of recovery against Carraby, Plaintiff has no possibility of recovery against Fastlane either. In analyzing the Defendants' improper joinder arguments, the Court must construe

---

[48] R. Doc. 1-1; R. Doc. 7-3 at pp. 5-6; R. Doc. 7-7; R. Doc. 12 at p. 3.
[49] R. Doc. 1.
[50] *Delaney*, 41 F. Supp. 2d at 674 (citing *Jernigan*, 989 F.2d at 817); *Vinson*, 2001 WL 1090793, at *1 (first citing *Jernigan*, 989 F.2d at 817; then *Delaney*, 41 F. Supp. 2d at 674).
[51] *See Bosky*, 288 F.3d at 211.
[52] R. Doc. 1 at ¶¶ XIII.-XIX.; R. Doc. 10 at pp. 3-5; R. Doc. 12 at pp. 2-5.
[53] R. Doc. 1-1 at pp. 14-17.

factual allegations, resolve contested factual issues, and resolve legal ambiguities in Plaintiff's favor.[54] Having conducted a Rule 12(b)(6)-type analysis of Plaintiff's state-court petitions and considering the evidence in the record, including Carraby's dash camera video, the Court finds the non-diverse Defendant Carraby was not improperly joined. There exists a possibility that Plaintiff may recover from Carraby under Louisiana law. Louisiana law imposes a presumption of negligence on the "following" motorist involved in a rear-end collision.[55] The motorist who is hit from behind is called a "favored" motorist and is presumed not to be at fault.[56] This presumption is not absolute, however, and may be rebutted in one of two ways.[57] First, the following motorist may rebut the presumption by "proving that he had his vehicle under control, closely observed the preceding vehicle, and followed at a safe distance under the circumstances."[58] Second, the following motorist may "avoid liability by proving that the driver of the lead vehicle negligently created a hazard that he could not reasonably avoid,"[59] which is known as the sudden-emergency doctrine.[60] Further, "notwithstanding the presumption of negligence, a favored motorist can still be assessed with comparative fault if his or her substandard conduct contributed to the cause of the accident."[61]

In this case, Plaintiff is the "favored" motorist because he was hit from behind. For purposes of this analysis, Carraby is the "following" motorist against whom the law

---

[54] *Rodrigue*, 2014 WL 4999465, at *2 (citing *Burden*, 60 F.3d at 216).
[55] *Leblanc v. Bouzon*, 2014-1041 (La. App. 3 Cir. 3/4/15), 159 So. 3d 1144, 1146.
[56] *Id.*
[57] *Id.*
[58] *Johnson v. Magitt,* 12-0200 (La. App. 1 Cir. 9/21/12), 111 So. 3d 11, 13 (citing *Taylor v. Voigtlander*, 36,670, p. 4 (La. App. 2 Cir. 12/11/02), 833 So. 2d 1204, 1206).
[59] *Id.* (citing *Daigle v. Mumphrey*, 96-1891, pp. 2-3 (La. App. 4 Cir. 3/12/97), 691 So. 2d 260, 262).
[60] *See, e.g., Harbin v. Ward*, 13-1620, p. 5 (La. App. 1 Cir. 5/29/2014), 147 So. 3d 213, 219.
[61] *Graffia v. La. Farm Bureau Cas. Ins. Co.*, 08-1480, p. 7 (La. App. 1 Cir. 2/13/09), 6 So. 3d 270, 274.

assigns a presumption of fault.[62] Defendants must overcome this presumption to satisfy their demanding burden of showing Carraby was improperly joined. Indeed, Plaintiff's petition alleges Carraby is liable for failing to slow before causing the accident and rear-ending Plaintiff's vehicle.[63]

In spite of the presumption against Carraby, Defendants contend Carraby's dash camera footage negates Plaintiff's chances of recovering against Carraby. The JPL Defendants argue, "[p]er . . . Carraby's dash cam, Carraby was traveling at approximately 4 miles per hour at the time of the collision with sufficient space between the Plaintiff's vehicle ahead. There is no evidence of Carraby's negligence."[64] Additionally, the Fastlane Defendants argue "[t]he facts gathered from the dash camera footage negate any possibility of negligence of" the Fastlane Defendants.[65]

Plaintiff does not submit evidence to contradict Carraby's dash camera footage. Instead, Plaintiff argues Carraby's "[d]ash camera footage . . . confirms that Carraby's truck did not simply 'roll' forward from a prior impact; rather, it surged ahead with significant force."[66] Plaintiff argues Carraby's dash camera footage "supports a reasonable inference that Carraby accelerated when struck from the rear, was traveling too fast for conditions, failed to maintain a proper following distance, or was inattentive—each of which is actionable negligence under Louisiana law."[67]

---

[62] *Fenner v. Elite Transportation Grp., Inc.*, No. 14-1395, 2016 WL 231098, at *3 (E.D. La. Jan. 19, 2016) (holding the middle car in a three-car rear-end collision was a favored motorist while the third car was the following motorist).
[63] R. Doc. 1-1 at pp. 15-16.
[64] R. Doc. 12 at p. 2.
[65] R. Doc. 10 at p. 3.
[66] R. Doc. 7-3 at p. 11.
[67] *Id.*

Even considering Carraby's dash camera footage, Defendants cannot meet their heavy burden of showing Plaintiff has no possibility of recovery against Carraby. The Court must construe Plaintiff's allegations, resolve disputed issues of fact, and resolve ambiguities in the law in Plaintiff's favor.[68] At this stage in these proceedings, it is inappropriate for the Court to invade the province of the jury and conclude Carraby's dash camera footage unequivocally shows that Plaintiff cannot recover against Carraby under a negligence theory of liability. In the similar context of summary judgment, the Fifth Circuit has stated that "the use of summary judgment is rarely appropriate in negligence" cases.[69]

> Because of the peculiarly elusive nature of the term 'negligence' and the necessity that the trier of facts pass upon the reasonableness of the conduct in all the circumstances in determining whether it constitutes negligence, it is the rare personal injury case which can be disposed of by summary judgment, even where the historical facts are concededly undisputed.[70]

"Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability" for negligence under Louisiana's Civil Code.[71] To prevail on his negligence claim, a plaintiff must prove: (1) the defendant owed him a duty of care; (2) the defendant failed to conform his conduct to the standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.[72] In Plaintiff's amended state court petition, Plaintiff alleges Carraby failed to slow down and rear-ended Plaintiff's vehicle.[73] Construing Plaintiff's allegations in his

---

[68] *Rodrigue*, 2014 WL 4999465, at *2 (citing *Burden*, 60 F.3d at 216).
[69] *Davidson v. Stanadyne, Inc.*, 718 F.2d 1334, 1338 (5th Cir. 1983).
[70] *Id.* (quoting *Gauk v. Meleski*, 346 F.2d 433, 437 (5th Cir. 1965)).
[71] *Nguyen v. Talabaev*, No. 23-2457, 2023 WL 6365963, at *3 (E.D. La. Sept. 29, 2023) (citing *Jenkins v. Hernandez*, 2019-0874, p. 6 (La. App. 1 Cir. 6/3/20), 305 So. 3d 365, 371).
[72] *Id.* (citing *Jenkins*, 305 So. 3d at 371).
[73] R. Doc. 1-1 at pp. 15-16.

favor, resolving disputed issues of fact in Plaintiff's favor, and resolving ambiguities in the law in Plaintiff's favor,[74] the Court concludes (1) Plaintiff has stated a claim upon which relief may be granted against Carraby, and (2) there is a question of fact as to Carraby's negligence.[75] These allegations are sufficient to plead a claim for negligence against Carraby.[76]

The Court is mindful of the Fifth Circuit's admonition that "the use of summary judgment is rarely appropriate in negligence" cases[77] because the trier of fact must determine the reasonableness of conduct and whether it constitutes negligence, even when the facts are undisputed. In light of the Fifth Circuit's guidance on summary judgment in negligence cases, the Court does not find that Plaintiff has no chance of recovering against Carraby for negligence. Accordingly, the case will be remanded to state court as this Court lacks diversity jurisdiction.

**V.    The Court will deny Plaintiff's request for attorneys' fees and costs.**

Finally, the Court must address the propriety of Plaintiffs' request for attorneys' fees and costs under 28 U.S.C. § 1447(c).[78] Under 28 U.S.C. § 1447(c), a plaintiff seeking remand may be entitled to attorneys' fees and other just costs associated with an improvident removal by a defendant. While this statute authorizes the Court to award fees and costs upon remanding a case back to state court, it does not require such an award, and the Court has discretion to determine if the circumstances surrounding the removal

---

[74] *Rodrigue*, 2014 WL 4999465, at *2 (citing *Burden*, 60 F.3d at 216).
[75] *See Cousin v. Flores,* No. 02-0428, 2002 WL 927795, at *2 (E.D. La. May 7, 2002); *see also Dorsey v. Hertz Corp.*, No. 16-3680, 2016 WL 6575190, at *4 (E.D. La. Nov. 7, 2016) (citing *Wagley v. State Nat. Ins. Co.*, No. 13-98, 2013 WL 5460576, at *3 (M.D. La. Sept. 30, 2013)).
[76] *See Wilson v. Ace Am. Ins. Co.*, No. 17-00427, 2017 WL 3159033, at *3-4 (W.D. La. June 30, 2017), *R. & R. adopted*, 2017 WL 3159007 (W.D. La. July 24, 2017); *Carriere v. XJT Holdings, Inc.*, No. 05-1290, 2006 WL 8434009, at *3 (M.D. La. Jan. 12, 2006), *R. & R. adopted*, 2006 WL 8434104 (M.D. La. Feb. 9, 2006).
[77] *Davidson*, 718 F.2d at 1338.
[78] R. Doc. 7-3 at pp. 15-16.

were such that an award of fees and costs to the party resisting removal is warranted.[79] In exercising this discretion, the district court does not consider the removing defendant's motivations for removing the case; instead, the district court need only consider whether the removing defendant had an "objectively reasonable" basis for removal.[80]

The Court, in its discretion, finds an award of costs and fees to plaintiff is not appropriate in this case. The JPL Defendants' decision to remove the case to federal court, while ultimately incorrect, was not so off base or misguided to be characterized as objectively unreasonable. As such, an award of costs and attorneys' fees is not appropriate.

## CONCLUSION

**IT IS ORDERED** that Plaintiff's motion to remand is **GRANTED IN PART** and **DENIED IN PART**.[81]

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the Civil District Court for the Parish of Orleans.

**IT IS FURTHER ORDERED** that Plaintiff's request for attorneys' fees under 28 U.S.C. § 1447(c) is **DENIED**.

**New Orleans, Louisiana, this 28th day of August, 2025.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[79] *See, e.g.*, *Valdes v. Wal–Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000) ("There is no automatic entitlement to an award of attorneys' fees. Indeed, the clear language of the statute makes such an award discretionary.").
[80] *Am. Airlines, Inc. v. Sabre, Inc.*, 694 F.3d 539, 541-42 n. 2 (5th Cir. 2012).
[81] R. Doc. 7. In Plaintiff's memorandum in support of his motion to remand, Plaintiff alternatively requested permission to amend his complaint to add the LA DOTD as a defendant if the motion to remand were denied. R. Doc. 7-3 at pp. 1, 13-15. Because the Court is remanding this case, it will not address Plaintiff's alternative demand.